

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **DOUGLAS RAY WATTS,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:19-CV-00713-Y** |
| | § | |
| **ANDREW SAUL,** | § | |
| **COMMISSIONER OF SOCIAL** | § | |
| **SECURITY.** | § | |

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JAN 1 1 2021

CLERK, U.S. DISTRICT COURT
By_____
Deputy

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**
**AND**
**NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b). The Findings, Conclusions, and Recommendation

of the United States Magistrate Judge are as follows:

**FINDINGS AND CONCLUSIONS**

**I. STATEMENT OF THE CASE**

Plaintiff Douglas Ray Watts ("Watts") filed this action pursuant to Sections 405(g) and

1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the

Commissioner of Social Security denying his claims for a period of disability and disability

insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title

XVI of the Social Security Act ("SSA"). Watts protectively filed his applications in October 2016,

alleging that his disability began on December 31, 2009. (Transcript ("Tr.") 24; *see* Tr. 177–98.)

After his applications were denied initially and on reconsideration, Watts requested a hearing

before an administrative law judge ("ALJ"). (Tr. 24; *see* Tr. 111–29.) The ALJ held a hearing on

August 7, 2018 and issued a decision on November 20, 2018 denying Watts' applications for

1

benefits. (Tr. 24–62.) On July 19, 2019, the Appeals Council denied Watts' request for review, leaving the ALJ's November 20, 2018 decision as the final decision of the Commissioner in Watts' case. (Tr. 1–4.) Watts subsequently filed this civil action seeking review of the ALJ's decision.

## I. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA. In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI). Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). First, the claimant must not be presently working at any substantial gainful activity. *Id.* §§ 404.1520(a)(4)(i), (b), 416.920(a)(4)(i). "Substantial gainful activity" is defined as work activity involving the use of significant and productive physical or mental abilities for pay or profit. *See id.* §§ 404.1510, 416.910. Second, the claimant must have an impairment or combination of impairments that is severe. *Id.* §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"). 20 C.F.R. Pt. 404 Subpt. P, App. 1; 20 C.F.R. §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d).[1] Fourth, if disability cannot be found

---

[1] Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity to determine the most the claimant is able to do notwithstanding her physical and mental

based on the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f), 416.920(a)(4)(iv), (f). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity ("RFC"), age, education, and past work experiences. *Id.* §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.* If the Commissioner meets his burden, it is up to the claimant to then show that he cannot perform the alternate work. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards, and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988) (per curiam). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if *no* credible evidentiary choices or medical findings support the decision. *Id.* (emphasis added). An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so

---

limitations. 20 C.F.R. §§ 404.1520(a)(4), (e), 416.920(a)(4), (e). The claimant's RFC is used at both the fourth and fifth steps of the five-step analysis. *Id.* §§ 404.1520(a)(4), 416.920(a)(4). At step four, the claimant's RFC is used to determine if the claimant can still do her past relevant work. *Id.* §§ 404.1520(a)(4)(iv) 416.920(a)(4)(iv). At step five, the claimant's RFC is used to determine whether the claimant can adjust to other types of work. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollis v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009). This Court may neither reweigh the evidence in the record, nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

## II. ISSUES

In his brief, Watts presents the following issues:

1. Whether there is substantial evidence to support the ALJ's physical residual functional capacity ("RFC") determination;

2. Whether the ALJ failed to properly consider the medical opinions of the State Agency Medical Consultants ("SAMCs") and James Jensen, Psy.D ("Dr. Jensen") in determining Watt's mental RFC determination; and

3. Whether the ALJ failed to properly include all of the claimant's mental functional limitations in the RFC assessment.

(Plaintiff's Brief ("Pl.'s Br.") at 5–14.)[2]

## III. ALJ DECISION

In his November 20, 2018 decision, the ALJ found that Watts had not engaged in any substantial gainful activity since December 31, 2009, his alleged onset date of disability, and that he met the disability insured status requirements of the SSA through December 31, 2014. (Tr. 26.) At Step Two, the ALJ found that Watts suffered from the following "severe" impairments: "borderline intellectual functioning, bipolar with depression and psychosis, schizoaffective disorder, obesity, carpal tunnel syndrome of the upper right extremity, and degenerative disc disease of the cervical, thoracic, and lumbar spines." (Tr. 26–27 (emphasis omitted).) At Step

---

[2] The Court notes that Watts, in the first two pages of his brief, lists four issues. (Pl.'s Br. at 1–2.) However, in the body of his brief, Watts condenses the issues into three issues, as set forth above.

Three, the ALJ found that Watts did not suffer from an impairment or combination of impairments that met or equaled any section in the Listing. (Tr. 27–31.)

As to Watts' RFC, the ALJ stated:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can never climb ladders, ropes, or scaffolds. The claimant can occasionally climb ramps and stairs. He can occasionally balance, stoop, kneel, crouch, and crawl. The claimant can frequently reach, handle, and finger with his bilateral upper extremities. He can understand, remember, and carry out simple instructions and tasks. The claimant can have no interaction with the public. He can occasionally interact with coworkers and supervisors.

(Tr. 31(emphasis omitted).) Based upon this RFC assessment, the ALJ concluded that Watts was unable to perform his past relevant work. (Tr. 40.) However, based upon the testimony of a vocational expert ("VE"), the ALJ found that there were jobs that existed in significant numbers in the national economy that Watts could perform. (Tr. 41.) Consequently, the ALJ found that Watts was not disabled. (Tr. 42.)

## IV. DISCUSSION

### A. Physical RFC Determination[3]

As to his first issue, Watts argues that substantial evidence does not support the ALJ's physical RFC determination because the ALJ substituted his own medical judgment to determine Plaintiff's RFC. (Pl.'s Br. at 5.) In support of his claim, Watts argues:

> Having rejected the opinion of the State agency medical consultant that the Plaintiff can perform medium work, and the opinion that Mr. Watts has no manipulative limitations, there is no other medical opinion in the record establishing Plaintiff's physical residual functional capacity. Hence there is an

---

[3] The Court notes that Watts, in his brief, also claims that the ALJ erred by giving little weight to the SAMCs **mental** RFC determination that found Watts was capable of simple-repetitive tasks that are structured, slow-paced, and do not require much ongoing interaction with others. (Pl.'s Br. at 7-8) The Court will address this issue in the next section, *infra*.

"evidentiary deficit" which the ALJ may not fill with his own medical judgment. . . .

Our courts have agreed that the ALJ may not reject medical opinion evidence and reach his own determination as to residual functional capacity. . . .

The Fifth Circuit has held that an RFC without any specific medical support in the record, such as is the case here, cannot be upheld. *See Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir 2009) ("In *Ripley*, we held that an ALJ may not—without opinions from medical experts—derive the applicant's residual functional capacity based solely on the evidence of his or her claimed medical conditions. Thus[,] an ALJ may not rely on her own unsupported opinion as to the limitations presented by the applicant's medical conditions"). The record must contain evidence of the effects the claimant's medical conditions have on her ability to work for the ALJ's RFC to be valid. *See Ripley v. Chater*, 67 F.3d 552, 557 n.27 (5th Cir. 1995).

The ALJ has not referred to other evidence in the record, including non-medical evidence, which would conclusively establish that Mr. Watt[s] has the ability to perform work at the light exertional level, with frequent use of his hands for reaching, handling and fingering bilaterally.

(Pl. Br. at 6–7.)

RFC is what an individual can still do despite his limitations.[4]  SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996).  It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis.  *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).  A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule.  SSR 96-8p, 1996 WL 374184, at *2.  RFC is not the least an individual can do but the most.  *Id.*  The RFC is a function-by-function assessment, with both exertional and nonexertional[5] factors to be considered, and it is based upon all of the

---

[4] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC.  *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005).  The Commissioner assesses the RFC before proceeding from step three to step four.  *Id.*

[5] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, pulling."  SSR 96-8p, 1996 WL 374184, at *5.  Each function must be considered separately, but the final RFC assessment may combine activities.  *Id.*  Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations.  *Id.* at *6.

relevant evidence in the case record. *Id.* at 3–6. The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023–24 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In making the RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017); SSR 96-8p, 1996 WL 374184, at *5. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* SSR 96-8p, 1996 WL 374184, at *5. The ALJ may draw reasonable inferences from the evidence in making his decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence. *See e.g.*, SSR 86-8, 1986 WL 68636, at *8 (1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (Aug. 1, 1991) (changing the ruling only to the extent the SSR discusses the former procedures used to determine disability in children).

The ALJ is not required to incorporate limitations in the RFC that he did not find the record supported. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record."). In reviewing the ALJ's decision, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd*, 239 F.3d at 704.

In this case, the ALJ found, as stated above, that Watts had the physical RFC to perform light work except that he: (1) can never climb ladders, ropes, or scaffolds; (2) can occasionally

climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and (3) can frequently reach, handle, and finger with his bilateral upper extremities. (Tr. 31.)  In making the physical RFC determination, the ALJ considered, *inter alia*, the opinions of Mary Terrell, M.D. ("Dr. Terrell"), and the State agency medical consultant ("SAMC") regarding Watts' physical limitations, as well as other medical evidence in the record, stating:

> On June 23, 2017, the claimant reported to a consultative examination with Mary Terrell, M.D.  Exhibit 8F at 2.  During this examination, the claimant evidenced mostly intact objective findings such as normal range of motion, strength, reflexes, and sensation with the exceptions of edema in his lower extremities, decreased sensation in his right forearm and hand, decreased range of motion in his lumbar spine, and decreased reflexes in his biceps, forearms, knees, and ankles.  Exhibit 8F at 4 and 6-7.  The claimant was able to get on and off the examination table, move around the room without problems, and perform toe and heel walking.  Exhibit 8F at 4.  The claimant's tandem walking was somewhat off balance.  Exhibit 8F at 4.
>
> . . . .
>
> Moreover, the claimant's physical examinations show that he is capable of work activity consistent with the above residual functional capacity assessment.  On multiple occasions, the claimant showed mostly intact objective findings such as normal gait, range of motion, strength, reflexes, and sensation with the exceptions of edema in his lower extremities, decreased sensation in his right forearm and bilateral hands and thighs, tenderness in his right shoulder and left knee, decreased range of motion and swelling in his left ankle, decreased range of motion in his right elbow, decreased range of motion and tenderness in his lumbar spine, and decreased reflexes in his biceps, forearms, knees, and ankles.  Exhibits 8F at 4 and 6-7, 9F at 6-7, 10F at 6, 13, 22, 27-28, 32, 43, 48, 61, 65, 72, 79, 83, 90-91, 103-04, 107, and 114, and 12F at 4-5, 11, 16, 19, 25, 31, 37-38, 42-43, and 53. . . .
>
> . . . .
>
> As such, the claimant's alleged limitations from his . . . obesity, carpal tunnel syndrome of the right upper extremity, and degenerative disc disease of the cervical, thoracic, and lumbar spines are not wholly consistent with the medical evidence.  The limitations to his abilities to lift, carry, reach, climb, and perform manipulative and postural activities are provided for the claimant's obesity, carpal tunnel syndrome of the right upper extremity, and degenerative disc disease of the cervical, thoracic, and lumbar spines. . . .

As for the claimant's statements about his activities of daily living, the objective findings in the file and the claimant's treatment history are consistent with the less restrictive residual functional capacity assessment provided above. Although the claimant alleged he experiences difficulties lifting, reaching, sitting, standing, walking, bending, kneeling, squatting, and climbing stairs, he indicated he could perform personal care tasks, clean, perform yardwork, use public transportation, walk to get around, go out to eat, shop, and visit with friends and family. Exhibits 4E at 3-7 and 11E at 1-5. . . .

. . . .

I give partial weight to the findings of the consultative examiner, Dr. Terrell, because although Dr. Terrell did not provide a function-by-function assessment, his [sic] findings are somewhat consistent with the medical records as a whole. Exhibit 8F at 2–7. The findings are somewhat consistent with the medical record as a whole mostly showing intact objective findings such as normal gait, range of motion, strength, reflexes, and sensation with the exceptions of edema in his lower extremities, decreased sensation in his right forearm and bilateral hands and thighs, tenderness in his right shoulder and left knee, decreased range of motion and swelling in his left ankle, decreased range of motion in his right elbow, decreased range of motion and tenderness in his lumbar spine, and decreased reflexes in his biceps, forearms, knees, and ankles. Exhibits 8F at 4 and 6-7, 9F at 6-7, 10F at 6, 13, 22, 27-28, 32, 43, 48, 61, 65, 72, 79, 83, 90-91, 103-04, 107 and 114, and 12F at 4-5, 11, 16, 19, 25, 31, 37-38, 42-43, and 53.

I give little weight to the opinions of the State agency medical consultant because the opinions are inconsistent with the medical evidence. Exhibits 5A at 13-14 and 6A at 13-14. The State agency medical consultant opined the claimant could perform work consistent with a reduced range of medium work. Exhibits 5A at 13-14 and 6A at 13-14. Although she reviewed the claimant's medical records available at the time of her evaluation, the consultant did not have the benefit of reviewing the longitudinal evidence available at the time of the claimant's disability hearing. The opinions are inconsistent with the medical evidence showing mostly intact objective findings such as normal gait, range of motion, strength, reflexes, and sensation with the exceptions of edema in his lower extremities, decreased sensation in his right forearm and bilateral hands and thighs, tenderness in his right shoulder and left knee, decreased range of motion and swelling in his left ankle, decreased range of motion in his right elbow, decreased range of motion and tenderness in his lumbar spine, and decreased reflexes in his biceps, forearms, knees, and ankles. Exhibits 8F at 4 and 6-7, 9F at 6-7, 10F at 6, 13, 22, 27-28, 32, 43, 48, 61, 65, 72, 79, 83, 90-91, 103-04, 107, and 114, and 12F at 4-5, 11, 16, 19, 25, 31, 37-38, 42-43, and 53.

. . . .

In sum, the limitations to his abilities to lift, carry, reach, climb, and perform manipulative and postural activities are provided for the claimant's obesity, carpal tunnel syndrome of the right upper extremity, and degenerative disc disease of the cervical, thoracic, and lumbar spines. . . . The above residual functional capacity assessment is further supported by the medical evidence mostly showing intact objective findings such as normal gait, range of motion, strength, reflexes, and sensation with the exceptions of edema in his lower extremities, decreased sensation in his right forearm and bilateral hands and thighs, tenderness in his right shoulder and left knee, decreased range of motion and swelling in his left ankle, decreased range of motion in his right elbow, decreased range of motion and tenderness in his lumbar spine, and decreased reflexes in his biceps, forearms, knees, and ankles. Exhibits 8F at 4 and 6-7, 9F at 6-7, 10F at 6, 13, 22, 27-28, 32, 43, 48, 61, 65, 72, 79, 83, 90-91, 103-04, 107, and 114 and 12F at 4-5, 11, 16, 19, 25, 31, 37-38, 42-43, and 53.

(Tr. 36–40.)

Watts, citing to *Ripley, supra,* and other similar cases, argues that the ALJ erred when he rejected the SAMC's physical RFC determination that Watts could perform medium work and had no manipulative limitations as there was no other medical opinion in the recording establishing Watt's physical RFC. (Pl.'s Br. at 6.) In *Ripley,* the ALJ found that the claimant could perform sedentary work even though there was no medical evidence or testimony to support that conclusion. 67 F.3d at 557. The Fifth Circuit Court of Appeals, noting that the record contained a vast amount of evidence establishing that the claimant had a back problem[6] but not clearly establishing the effect that condition had on his ability to work, remanded the case with instructions for the ALJ to obtain a report from a treating physician regarding the effects of the claimant's back condition on his ability to work. *Id.* at 557–58. The Fifth Circuit rejected the injuries substantially supported the ALJ's conclusion because the Court was unable to determine the effects of the claimant's condition, "no matter how 'small,'" on his ability to work, absent a report from a qualified medical expert. *Id.* at 557 n.27.

---

[6] "The evidence that was available for review by the ALJ shows a four year history of surgery, medical examinations, and complaints of pain" as well as the claimant's testimony. *Id.*

As noted above, the ALJ is responsible for assessing a claimant's RFC based on all the relevant evidence in the record. 20 C.F.R. §§ 404.1546(c), 416.946(c). If substantial evidence in the record supports an ALJ's determination of a claimant's RFC, there is no reversible error. *See Gutierrez v. Barnhart,* 2005 WL 1994289, at *7 (5th Cir. Aug. 19, 2005). Contrary to the facts in *Ripley*, there are, in this case, multiple medical opinions that assess the effects of Watts' functional physical impairments on his ability to work. The ALJ, in making his physical RFC determination, dedicated over four pages in his decision to considering and analyzing the medical and other evidence in the record relating to Watts' physical RFC. The ALJ properly considered the evidence as a whole, utilizing not only parts of the opinions in the record, but also the other medical evidence in the record including Dr. Terrell's opinions and Watts' own testimony to determine Watts' RFC. In fact, the ALJ imposed a more restrictive physical RFC determination of light work (with additional limitations) than the medium work found by the SAMCs. The ALJ discussed the evidence in the record in making his RFC determination, adequately explained the reasoning for such determination and for giving less weight to certain evidence, and exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *See, e.g., Muse,* 925 F.2d at 790. Because there is substantial evidence in the record that supports the ALJ's RFC determination, remand is not required as to this issue.

### B. <u>Mental RFC Determination and Dr. Jensen's Opinions</u>

In his brief, Watts also argues that the ALJ erred in giving little weight to the opinions of the SAMCs as to Watts' mental RFC determination. Specifically, Watts states:

> Similarly, the State agency medical consultants found that, from a mental standpoint, Mr. Watts is capable of simple, repetitive tasks that are structured, slow-paced, and do not require much ongoing interaction with others. (Tr. 89, 107). The ALJ gave "little weight" to the opinions of the State agency psychological

11

consultants, also finding that these opinions were inconsistent with the medical evidence (Tr. 38). The ALJ noted that subsequent evidence found depressed mood, depressed affect, impaired memory, attention, judgment and concentration (Tr. 39). Nothing referred to by the ALJ suggests that the limitations described by the State agency for the additional limitations regarding structured and slow-paced work, are not required. There is no other medical opinion in this record (other than the opinion of Dr. Jensen, to be discussed *infra*), which suggests that Mr. Watts does not require the specific accommodations described by the State agency medical consultants. Accordingly, the ALJ improperly substituted his own medical judgment to reject the limitations described by the State Agency medical consultants, without establishing a medical basis for doing so.

(Pl.'s Br. at 7–8.) Watts also argues that the ALJ erred in failing to make any findings about the medical source statement of Dr. Jensen, a psychological consultative examiner. (Pl.'s Br. at 8–10.) Specifically, Watts claims that "the ALJ never took note of the opinion of Dr. Jensen regarding the Plaintiff's inability to complete tasks in a timely manner." (Pl.'s Br. at 9.) Watts further states:

While the ALJ did find that Mr. Watts is moderately limited with regard to concentration, persistence and pace (Tr. 28–29), this is not consistent with Dr. Jensen's finding that Mr. Watts cannot focus attention sufficiently to complete tasks timely and appropriately.

Certainly, the ALJ was not bound by the opinion of Dr. Jensen, especially if he could point to other evidence from treating or examining physicians to support a contrary conclusion. But in order to reject the opinion of Dr. Jensen, the ALJ must first recognize it and explain the weight he gave to the opinion and the reasons for such weight. Accordingly, the Plaintiff submits that the ALJ erred in failing to consider all medical opinion evidence in determining the Plaintiff's residual functional capacity.

(Pl.'s Br. at 9–10).

As noted above, the ALJ found that Watts had the mental RFC to understand, remember, and carry out simple instructions and tasks, have no interaction with the public, and occasionally interact with coworkers and supervisors. (Tr. 31.) In making this mental RFC determination, the ALJ set forth the Plaintiff's testimony and discussed over twenty of Watts' mental health examinations ranging from August 2010 through November 2017, including health examinations

by Watts' treating psychiatrist at MHMR of Tarrant Count, Robert Mims, M.D. ("Dr. Mims"), as well as a psychological consultative examination dated June 6, 2017 with Dr. Jensen. (Tr. 32-36.) The ALJ further stated:

> Moreover, the claimant's psychological examinations show that he is capable of work activity consistent with the above residual functional capacity assessment. On multiple occasions, the claimant showed mostly intact psychological objective findings such as alertness, orientation, pleasantness, cooperativeness, and normal speech, mood, affect, judgment, attention, concentration, memory, and behavior with the exceptions of depressed moods, depressed affects, and impaired memory, attention, judgment, and concentration. Exhibits 1F at 9, 14, and 18, 2F at 6, 8, 11, 18-19, 23, 28, 31-32, 35-36, 39-40, 43, and 46-47, 3F at 2-3, 9 and 15, 4F at 3, 6F at 3, 7F at 4-5, 9F at 7, 10F at 6, 13, 22, 32, 43, 47-48, 61, 65, 72, 78-79, 83, 90-91, 103-04, and 114, 11F at 57, 67, 76-77, and 83, and 12F at 5, 11, 16, 19, 25, 37-38, and 42-43.

(Tr. at 35–36.)

As to Dr. Jensen's opinions, the ALJ, in his decision, referenced Dr. Jensen's June 6, 2017 psychological consultative examination at least eight times when analyzing whether Watts had a mental impairment or combination of mental impairments that met or equaled sections 12.03, 12.04, or 12.05 of the Listing. (Tr. 28–31 (mentioning Exhibit 7F or the "psychological examination" or the "psychological consultative examination" or the "psychological consultative examiner"); *see* Tr. 442–46.) In addition, the ALJ stated:

> On June 6, 2017, the claimant reported to a psychological consultative examination with James Jensen, Psy.D. Exhibit 7F at 2. During this examination, the claimant evidenced mostly intact psychological objective findings such as alertness, orientation, and normal speech with the exceptions of depressed mood and despondent affect. Exhibit 7F at 4-5. The claimant was able to recall his date of birth, two objects out of three objects after a five-minute delay, and two digits forward. Exhibit 7F at 5. The claimant was able to countdown backward from 20 to 0, but unable to calculate serial sevens or threes. Exhibit 7F at 5. The claimant reported to the psychological consultative examiner that he could perform personal care tasks and visit with friends.
>
> . . . .

13

. . . Despite the claimant's allegation that he experiences disabling pain, borderline intellectual functioning, bipolar with psychosis, and schizoaffective disorder, on multiple occasions, the claimant was found to be in no distress. Exhibits 8F at 3, 9F at 6, 10F at 6, 22, 32, 61, 65, 78, 83, and 114, and 12F at 4, 10, 16, 19, 31, 37, 42, and 52.

. . . Although the claimant sought treatment from a psychiatrist, the claimant's treating psychiatrist recommended the claimant schedule follow up appointments every month to six months suggesting that the claimant's condition did not require specialized acute care examinations. Exhibits 2-4F, 6F, and 11F. There is no evidence in the record during the relevant period of inpatient mental health hospitalizations. The claimant admitted to being better with treatment. Exhibits 9F at 12 and 11F at 77 and 83-84. The claimant's treating physicians noted his condition was stable with treatment. Exhibits 3F at 16, 4F at 4, 9F at 8, 10F at 92, and 12F at 33 and 45. The claimant's treating physicians noted his treatment was effective including his medications. Exhibits 3F at 16, 4F at 3-4, 9F at 8 and 12, 10F at 17, 84, 92, and 110, and 12 F at 7.

As such, the claimant's alleged limitations from his borderline intellectual functioning, bipolar with psychosis [and] schizoaffective disorder[] . . . are not wholly consistent with the medical evidence. . . . The limitations to his abilities to interact with others and perform instructions and task are provided for the claimant's borderline intellectual functioning, bipolar with psychosis, and schizoaffective disorder.

. . . Even though the claimant alleged he experiences difficulties remembering, concentrating, understanding, following instructions, completing tasks, and getting along with others, he indicated he could read, perform personal care tasks, clean, perform yardwork, use public transportation, go out to eat, shop, pay bills, count change, watch television, stay in a halfway house, follow written instructions, and visit with friends and family. Exhibits 4E at 3-7 and 11E at 1-5. The claimant reported to the psychological consultative examiner that he could perform personal care tasks and visit with friends. Exhibit 7F at 3. The claimant admitted to being better with treatment. Exhibits 9F at 12 and 11F at 77 and 83-84. The claimant's treating physicians noted his treatment was effective including his medications. Exhibits 3F at 16, 4F at 3-4, 9F at 8 and 12, 10F at 17, 84, 92, and 110, and 12F at 7.

As for the opinion evidence, I give little weight to the findings of the psychological consultative examiner, Dr. Jensen, because Dr. Jensen did not provide a function-by-function assessment and his findings are inconsistent with the medical records as a whole. Exhibit 7F at 2-5. The findings are inconsistent with the medical records as a whole mostly showing intact psychological objective findings such as alertness, orientation, pleasantness, cooperativeness, and normal speech, mood, affect, judgment, attention, concentration, memory, and behavior with the exceptions of depressed moods, depressed affects, and impaired memory,

attention, judgment, and concentration. Exhibits 1F at 9, 14, and 18, 2F at 6, 8, 11, 18-19, 23, 28, 31-32, 35-36, 39-40, 43, and 46-47, 3F at 2-3, 9, and 15, 4F at 3, 6F at 3, 7F at 4-5, 9F at 7, 10F at 6, 13, 22, 32, 43, 47-48, 61, 65, 72, 78-79, 83, 90-91, 103-04, and 114, 11F at 57, 67, 76-77, and 83, and 12 F at 5, 11, 16, 19, 25, 37-38, and 42-43.

I give little weight to the opinions of the claimant's treating psychiatrist, Robert Mims, M.D. because the opinions are inconsistent with the medial records as a whole. Exhibits 3F at 3 and 11F at 40. Dr. Mims opined the claimant was disabled and had been so since childhood. Exhibits 3F at 3 and 11F at 40. First, the opinion states the claimant is disabled[;] however, that issue is reserved for the commissioner. Second, the opinions are inconsistent with the medical record as a whole mostly showing intact psychological objections findings . . . . Third, the opinions that the claimant has been disabled since childhood are inconsistent with the earnings reports in the record showing work at the substantial gainful activity level. There was no intervening medical event that caused the claimant to no longer be able to work. Indeed, the claimant had a steady job as a forklift operator until he got arrested and was incarcerated for several years. In February 2018, the claimant reported he was looking for a job and was working on the maintenance crew at the halfway house to occupy some of his time. (Id.). This non-medical evidence is not consistent with the opinion that the claimant has been disabled since childhood.

I give little weight to the opinions of the State agency psychological consultants because the opinions are inconsistent with the medical evidence. Exhibits 1A at 4-5, 5A at 11-12 and 14-16, and 6A at 11-12 and 14-16. The State agency psychological consultant at the initial level opined there was insufficient evidence to assess the claimant's mental health condition. Exhibit 1A at 4-5. The State agency psychological consultant at the reconsideration level opined the claimant could [perform] simple, repetitive tasks that are structured, slow paced and do not require much ongoing interaction with others. Exhibits 5A at 11-12 and 14-16 and 6A at 11-12 and 14-16. Although they reviewed the claimant's medical records available at the time of their evaluations, the consultants did not have the benefit of reviewing the longitudinal evidence available at the time of the claimant's disability hearing. These opinions are inconsistent with the medical evidence showing mostly intact psychological objective findings . . . .

. . . .

. . . The limitations to his abilities to interact with others and perform instructions and tasks are provided for the claimant's borderline intellectual functioning, bipolar with psychosis, and schizoaffective disorder. The above residual functional capacity assessment is supported by the medical record as a whole showing mostly intact psychological objective findings . . . .

(Tr. 35, 37–40.)

15

As to the SAMCs' opinions, Watts complains that the ALJ erred by giving them little weight when there is no other medical opinion evidence in the record that Watts does not require the specific accommodations described by the SAMCs that Watts is limited to simple, repetitive tasks that are structured, slow-paced, and do not require much ongoing interaction with others. Contrary to Watts' claims, the ALJ, while giving "little weight" to the SAMCs mental RFC determination, clearly considered their opinions and incorporated some of such opinions into the ALJ's mental RFC finding that Watts could understand, remember, and carry out **simple instructions and tasks, have no interaction with the public and occasional interaction with coworkers and supervisors**. Consequently, any error the ALJ made in describing the weight he gave to the SAMCs opinions was harmless as it is clear the ALJ did ascribe some weight to their opinions. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam) ("Procedural perfection in administrative proceedings is not required" and a court "will not vacate a judgment unless the substantial rights of a party have been affected.").

As to Dr. Jensen's opinions, Watts complains that the ALJ "never took note of the opinion of Dr. Jensen regarding the Plaintiff's inability to complete tasks in a timely manner." (Pl.'s Br. at 9.) The Court disagrees as the ALJ clearly and thoroughly analyzed and evaluated Dr. Jensen's findings in the psychological consultative examination in all parts of his decision. In fact, the ALJ specifically limited Watts to understanding, remembering, and carrying out simple instructions and tasks in the ALJ's mental RFC determination. (Tr. 31.) Such a limitation was clearly imposed by the ALJ to account for Watts' difficulties in completing tasks in a timely manner.

While an ALJ is to consider all medical opinions in determining the disability status of a claimant (*see* 20 C.F.R. §§ 404.1527(b), 416.927(b)), the ALJ is not required to give controlling weight to medical opinions of non-treating sources. *See Andrews v. Astrue*, 917 F. Supp. 2d 624,

16

637 (N.D. Tex. 2013) (stating that an ALJ is not required to give the opinions of a consultative examiner or a SAMC controlling weight). In this case, it is clear that the ALJ properly made his mental RFC determination after carefully analyzing **all** the medical opinion evidence in the record, including the opinions of the SAMCs, Dr. Mims, and Dr. Jensen. Consequently, the ALJ did not err in his mental RFC determination, and remand is not required.

## C. Non-Inclusion of Functional Limitations in RFC Determination

In his brief, Watts also argues the ALJ erred by failing to discuss his ambulation impairments necessitating the use of a cane and an "air cast universal wrist splint," as well as failing to discuss and analyze his mental impairments of anxiety and obsessive-compulsive disorders. (Pl.'s Br. at 10–14). Specifically, Watts states:

> As noted above, the Plaintiff appeared at the hearing using a cane, and wearing a wrist brace. The record establishes that on June 30, 2017 he was given an air cast universal wrist splint and was given a cane, with instructions as to use (Tr. 555). The ALJ never considered whether use of a cane for ambulation or use of a wrist splint would interfere with either the standing and walking required to perform work at the light exertional level, or with the Plaintiff's ability to perform frequent reaching, handling and fingering
>
> The ALJ found that the Plaintiff has the severe mental impairments of borderline intellectual functioning, bipolar with depression and psychosis, and schizoaffective disorder. The State agency medical consultants, however, also found that the Plaintiff has the severe impairment of anxiety and obsessive-compulsive disorders, to be evaluated under section 12.06 of 20 C.F.R., Appendix 1, Subpart P (the "Listing of Impairments"). The ALJ never recognized anxiety disorder as a severe impairment. Further in determining whether the Plaintiff has an impairment which meets or is equal in severity to an impairment described in the Commissioner's Appendix 1 for presumptive disability, the ALJ never considered the requirements of listing 12.06 (anxiety and obsessive-compulsive disorders). The Plaintiff has been prejudiced thereby, as had the ALJ properly evaluated all of the Plaintiff's severe impairments, he may have found additional and significant limitations which would further restrict Plaintiff's residual functional capacity.
>
> Having found that the Plaintiff has a severe mental impairment or combination of impairments, the ALJ applied the "paragraph B" criteria to evaluate the severity of such impairments under the four broad functional categories which

the Commissioner deems to be significant in determining residual functional capacity . . . . The ALJ found that the Plaintiff has a moderate limitation in each of these categories. But having found moderate limitations in each category, the ALJ failed to incorporate such limitations into his RFC determination.

. . . .

Comparing the criteria for [adapting or managing one's self] with the ALJ's RFC determination, there is nothing in the ALJ's finding which includes any limitations consistent with a moderate deficit in the ability to adapt or manage one's self. Further, the ALJ failed to include any such limitations into his hypothetical question to the [vocational expert ("VE")]. Thus, the hypothetical question failed to fully consider all of the limitations found by the ALJ.

. . . .

As the hypothetical question was deficient, by failing to include all of the functional limitations recognized by the ALJ, the response of the VE to such hypothetical question does not support the ALJ's conclusion at step 5 of the sequential evaluation of disability. . . .

(Pl.'s Br. at 10-13 (internal citations omitted).

### 1.  Use of Cane and Air Cast

In his brief, Watts argues that the ALJ erred in not considering whether his use of a cane for ambulation or use of a wrist splint would interfere with the standing and walking required to perform work at the light level or his ability to perform frequent reaching, handling, and fingering. In support, Watts points to only two pieces of evidence indicating his need for a cane and wrist splint (in a record that is over 950 pages long): (1) the fact that he appeared at the August 7, 2018 hearing before the ALJ using a cane and wearing a wrist brace and (2) that, on June 30, 2017, Watts was given a wrist splint and a cane on a visit to an urgent care center for back pain and right hand pain. (Pl.'s Br. at 10; *see* Tr. 52, 551, 555.) However, as noted by Defendant, "there is nothing in the record to show that Watts needed the devices to aid in standing or walking, nor did the prescribing physician describe the circumstances in which [such devices] were needed." (Defendant's Brief at 6.) In addition, in two "Function Report—Adult" forms dated January 18,

2017 and February 8, 2017, Watts did not indicate that he used a cane or brace/splint when specifically asked. (Tr. 242, 279.) Watts was not using a cane on June 23, 2017, as noted during the disability examination performed by Dr. Terrell. (Tr. 448.)[7]

As the Court noted above, an ALJ is not required to incorporate limitations into his RFC assessment that are not supported by the record, and he alone has the responsibility to determine which limitations are sufficiently supported. *Muse*, 925 F.2d at 790. Because the ALJ specifically considered Watts' difficulties in lifting, carrying, standing, and walking and incorporated appropriate limitations into the RFC based on the evidence in the record, the ALJ did not err and remand is not required.

### 2. Anxiety and Obsessive-Compulsive Disorders

As set forth above, Watts also argues that the ALJ erred in not finding that Watts had the severe impairments of anxiety and obsessive-compulsive disorder and evaluating such impairments under section 1.06 of the Listing. (Pl.'s Br. at 11.) In support, Watts points to opinions of the SAMCs that indicated Plaintiff had such severe impairments. (Pl.'s Br. at 11; *see* Tr. 66, 83–84, 101–02.) However, the "mere presence or diagnosis of some impairment is not disabling per se." *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983) ("Plaintiff must show that she was so functionally impaired by her [impairment] that she was precluded from engaging in any substantial gainful activity."). Moreover, the claimant has the burden of proving that her impairment or combination of impairments meets or equals a listing. *See Sullivan v. Zebley*, 493 U.S. 521, 531; *Selders v. Sullivan*, 914 F.2d 614, 619. "For a claimant to show that his impairment matches [or meets] a listing, it must meet *all* of the specified medical criteria." *Zebley*, 493 U.S. at 530 (emphasis in original). An impairment, no matter how severe, does not qualify if that

---

[7] During this examination, Watts stated that "he is intending to ask his doctor for a cane as he thinks he needs it." (Tr. 448.)

impairment exhibits only some of the specified criteria. *Id.* The court will find that substantial evidence supports the ALJ's finding at Step Three if the plaintiff fails to demonstrate the specified medical criteria. *Selders*, 914 F.2d at 619–20.

In this case, Plaintiff fails to point to any medical evidence showing how his alleged impairments of anxiety and obsessive-compulsive disorder precluded him from engaging in any substantial gainful activity. In addition, Plaintiff fails to point to any evidence in the record showing that he met the requirements of section 12.06 of the Listing.[8] Again, as the Court noted above, an ALJ is not required to incorporate limitations into his RFC assessment that are not supported by the record, and he alone has the responsibility to determine which limitations are sufficiently supported. *Muse*, 925 F.2d at 790. Consequently, the ALJ did not err in failing to find Watts had the severe impairments of anxiety and obsessive-compulsive disorder and considering such impairments under section 12.06.

### 3. Paragraph B Criteria and RFC Determination

Watts also argues generally that the ALJ's RFC mental determination and hypothetical to the VE does not adequately convey the limitations the ALJ had found earlier in his evaluation of Watts' mental impairments under "paragraph B." (Pl.'s Br. at 11-12.) In addition, Watts argues specifically that the ALJ erred in incorporating any limitations to account for the ALJ's findings under "paragraph B" that Watts had moderate restrictions in adapting or managing one's self. (Pl.'s Br. at 11.)

The Court notes that federal regulations require that the ALJ follow mandatory steps when evaluating the severity of mental impairments in claimants, which is known as the "special

---

[8] The Court notes that the SAMCs specifically considered Watts' "severe" impairments of anxiety and obsessive-compulsive disorders under, *inter alia*, section 12.06 and did not find that such disorders met or equaled this listing. (Tr. 63-110.)

technique." *See* 20 C.F.R. §§ 404.1520a, 416.920a. In evaluating mental disorders, the ALJ first considers whether a claimant has a medically determinable mental impairment. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; 20 C.F.R. §§ 404.1520a(b) (1), 416.920a(b)(1). To do so, the ALJ must specify the symptoms, signs, and laboratory findings that substantiate the presence of each impairment. 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). For most mental impairment Listings, the regulations require the ALJ to evaluate the degree of functional limitation resulting from the claimant's mental impairments pursuant to criteria identified in paragraphs A and B or A and C of the adult mental disorders contained in the Listings.[9] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; 20 C.F.R. §§ 404.1520a(b)(2) & (c), 416.920a(b)(2) & (c). "Paragraph B" contains four broad functional areas: 1) understand, remember, or apply information; 2) interact with others; 3) concentrate, persist, or maintain pace; and 4) adapt or manage oneself.[10]   20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00E. The ALJ's written decision must incorporate pertinent findings and conclusions based on the technique and must include a specific finding of the degree of limitation in each of the functional areas described. 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4).

After the ALJ rates the degree of functional limitation resulting from any mental impairment, the ALJ determines the severity of such impairment.  20 C.F.R. §§ 404.1520a(d), 416.920a(d).  If the ALJ finds that the mental impairment is severe at Step Two, then the ALJ must determine at Step Three if it meets or equals a listed mental disorder in the Listing.  20 C.F.R. §§

---

[9] "Listing 12.05 has two paragraphs that are unique to that listing (see 12.00A3) . . . ." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A.2.

[10] These four functional areas are known as the paragraph "B" criteria. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1 §§ 12.00A.2.b, 12.00E. The degree of limitation is rated on a five-point scale, which includes none, mild, moderate, marked, and extreme. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). Extreme "represents a degree of limitation that is incompatible with the ability to do any gainful activity." *Id.* "If we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities (see 404.1522). *Id.*

404.1520a(d)(2), 416.920a(d)(2).  If the impairment is severe but does not meet or equal a listed

mental impairment, then the ALJ must conduct an RFC assessment.  20 C.F.R. §§ 404.1520a(d)(3),

416.920a(d)(3).

In this case, as stated above, the ALJ found that Watts suffered from, *inter alia,* the severe

impairments of borderline intellectual functioning, bipolar with depression and psychosis, and

schizoaffective disorder.  (Tr. 26)  In addition, the ALJ, in evaluating the paragraph B criteria,

found that Watts had moderate limitations in all four functional areas, which included (1)

understanding, remembering, or applying information; 2) interacting with others; 3) concentrating,

persisting, or maintaining pace; and 4) adapting or managing oneself.  (Tr. 28–29.)  As to her

mental RFC, the ALJ stated that Watts can understand, remember, and carry out simple

instructions and tasks, can have no interaction with the public, and can occasionally interact with

coworkers and supervisors.  (Tr. 31.)

As to Watts' general claim that, in essence, the ALJ's mental RFC determination limiting

Watts to understanding, remembering, and carrying out simple instructions and tasks and having

no interaction with the public and only occasionally interaction with coworkers and supervisors

fails to adequately incorporate the moderate limitations in the four functional areas of the

paragraph B criteria that the ALJ found earlier, the Court again notes that the responsibility for

determining the RFC falls to the ALJ. *Ripley,* 67 F.3d at 557. The paragraph B criteria limitation

of having moderate limitations in the four functional areas that the ALJ found following the

"special technique" is not an RFC assessment.  SSR 96–8p, 1996 WL 374184, at *4.  Instead, it is

used to rate the severity of Watts' mental impairments at Steps 2 and 3 of the sequential evaluation

process. *Id.*  "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation

process requires a more detailed assessment by itemizing various functions contained in the broad

categories found in paragraphs B and C of the adult mental disorder listings in 12.00 of the Listing of Impairments . . . ." *Id.* Moreover, "[w]hile the regulations require the ALJ to evaluate[ ] the limitations imposed by Plaintiff's mental impairments in certain areas and direct the ALJ to proceed to the RFC determination if Plaintiff's impairments are found severe, the regulations do not specifically require the ALJ to find that the limitations found in evaluating the mental impairment must be word-for-word incorporated into either the RFC determination or the hypothetical question posed to the VE." *Patterson v. Astrue,* No. 1:08–CV–109–C, 2009 WL 3110205, at *5 (N.D. Tex. Sept.29, 2009). Thus, the ALJ did not err.

As to Watts' specific claim that the ALJ erred by failing to include limitations in the mental RFC to account for Watts' moderate limitations in the ability to adapt or manage oneself,[11] the Court finds that the ALJ's mental RFC determination limiting Watts to the performance of detailed but not complex work and social restrictions reasonably incorporated into the RFC such moderate limitation. *See Ernest. A. J. v. Saul,* 1:18-CV-00194-BU, 2020 WL 6877706, at *15-16 (N.D. Tex. Oct. 19, 2020), report and recommendation adopted sub nom. *Ernest A. J. v. Saul,* 1:18-CV-194-C-BU, 2020 WL 6873609 (N.D. Tex. Nov. 23, 2020) (finding, *inter alia,* that ALJ's mental RFC determination limiting Plaintiff to having occasional contact with supervisors and co-workers and no contact with the general public adequately accounted for Plaintiff's moderate limitation in the ability to adapt and manage himself (as well as his marked limitation in interacting with others)

---

[11] The ability to adapt or manage oneself is defined as follows:

This area of mental functioning refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting. Examples include: Responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions. These examples illustrate the nature of this area of mental functioning.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E4.

23

under the paragraph B criteria); *Hyder v. Saul*, No. 4:19-cv-00976-O-BP, 2020 WL 5511314, at *4 (N.D. Tex. Sept. 14, 2020) (finding restriction in the mental RFC determination to simple tasks with social restrictions reflect that the ALJ has reasonably incorporated into the RFC the Plaintiff's moderate ability to adapt or manage herself in the workplace found in the paragraph B analysis).

In this case, as noted above, the ALJ properly discussed the evidence in the record in making the RFC determination, explained the reasoning for the RFC determination, and exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into the RFC assessment that were most supported by the record. *Muse,* 925 F.2d at 790 (5th Cir.1991). Because there is substantial evidence in the record that supports the ALJ's evaluation of Watts' mental impairments as well as his mental RFC assessment, remand is not required.

## RECOMMENDATION

It is recommended that the Commissioner's decision be **AFFIRMED**.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions

accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **January 25, 2021**, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be file within seven (7) days of the filing date of objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket for the United States District Judge.

SIGNED January 11, 2021.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE